UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BULMARO ESPARZA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14 CV 1390 |
| v. | ) |
| | ) Hon. Marvin E. Aspen |
| THOMAS DART, Sheriff of Cook County, | ) |
| COOK COUNTY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Bulmaro Esparza ("Esparza") filed this action pursuant to 42 U.S.C. § 1983 against Defendants Thomas Dart, the Sheriff of Cook County, ("Dart") and Cook County, Illinois ("Cook County"). Before us are cross-motions for summary judgment. For the reasons set forth below, we deny Plaintiff's motion and grant Defendants' motion.

**FACTUAL BACKGROUND**

We begin with the pertinent facts. Unless otherwise noted, the facts described herein are undisputed and culled from the parties' Local Rule 56.1 statements of fact and exhibits. (*See* Defs. Rule 56.1 Statement of Facts, Dkt. No. 51 [*hereinafter* Defs. SOF]; Pl. Rule 56.1 Statement of Facts, Dkt. No. 56 [*hereinafter* Pl. SOF].) To the extent that either party objected to certain statements of fact or exhibits, we shall rely on admissible evidence only for the purposes of our analysis.[1] *See e.g., Hemsworth v. Quotesmith Com., Inc.*, 476 F.3d 487, 490

---

[1] We note that Plaintiff has failed to submit a response to Defs. SOF and instead, filed only his own SOF in support of his motion for partial summary judgment. (*See* Dkt. No. 56.) Under Local Rule 56.1, a nonmovant must admit or deny each factual statement proffered by the moving party and concisely designate any material facts that establish a genuine dispute for trial.

(7th Cir. 2007) ("The evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial."). Accordingly, we decline to address objections specifically unless warranted.

1. Facts

    a. **Plaintiff's Injury and Treatment**

On November 11, 2010, while a pre-trial detainee at the Cook County Department of Corrections ("CCDOC"), Plaintiff was attacked by several detainees and fractured his right second metacarpal (index finger) when he was struck with a cane. (Pl. SOF ¶¶ 5, 7, 10.) Plaintiff was taken to the John H. Stroger Hospital by ambulance, accompanied by Sheriff's deputies, where he was examined and treated for multiple injuries, including injuries to his hand. (Defs. SOF ¶ 15.) At the hospital, x-rays were conducted, confirming a break in his index finger. (*Id*. ¶ 16.) Plaintiff was given a "clam digger" splint and a partial cast. (*Id*.) As instructed by his physician, Plaintiff wore the splint for three weeks until it was removed by a doctor. (*Id*. ¶ 12.) Three weeks later, on December 2, 2010, Plaintiff was seen for a follow-up appointment by jail physician, Dr. Kapotas, at Cermak Hospital at the jail. (Pl. SOF ¶ 13; Defs. SOF ¶ 18.) At that time, Dr. Kapotas diagnosed tenderness of the second and third metacarpal heads and a metacarpal neck fracture and prescribed "buddy-taping," a new splint, and a narcotic for pain. (Pl. SOF ¶¶ 14–15; Defs. SOF ¶ 19.) Plaintiff was ordered to return to the clinic in two weeks. (Defs. SOF ¶ 25.) Two weeks later, on December 16, 2010, Plaintiff was seen at Cermak Hospital, again. (*Id*. ¶ 26.) During this appointment, Dr. Kapotas noted that Plaintiff's x-rays showed a healing fracture and put Plaintiff on a plan to begin range of motion

---

*Schrott v. Bristol-Myers Squibb Co*., 403 F.3d 940, 944 (7th Cir. 2005). We may consider as true those statements in Defs. SOF to which there is no response. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 609 (7th Cir. 2006). However, based on a review of Pl. SOF, we will construe any differing factual allegation in Defs. SOF and Pl. SOF as disputed.

exercises. (*Id*. ¶ 27.) Dr. Kapotas wrote Plaintiff a prescription for Tylenol 3, a narcotic, and ordered a follow-up appointment in three weeks. (*Id*.) Three weeks later, on January 6, 2011, Plaintiff was examined at the Jail's orthopedic clinic by a physician assistant. (Pl. SOF ¶ 22; Defs. SOF ¶ 29.) During this examination, the physician assistant noted that Plaintiff was to return for a follow-up appointment in six weeks (around February 18, 2011) and recommended Plaintiff visit the "ortho clinic [at Stroger Hospital] to discuss options." (Pl. SOF ¶ 19, Pl. Ex. 12; Defs. SOF ¶ 32.) There is no record that Plaintiff was scheduled for or transported to a follow-up appointment in February. (Dkt. 51-6 at 36–37; *see also* Dkt. 51-8.)

On January 23, 2011, Plaintiff was taken to the Emergency room for injuries sustained in another fight. (Defs. SOF ¶ 16.) Two days later, Plaintiff was scheduled for and taken to the ortho clinic. (*Id*. ¶ 17.) On January 31, Plaintiff was seen at Stroger Hospital's clinic and Plaintiff's doctor recommended physical therapy for his hand.[2] (*Id*.) CCDOC has no record indicating that Plaintiff received physical therapy, as recommended. (Defs. SOF ¶ 54.)

---

[2] Defendants object to the admissibility of the January 31, 2011 clinic note on hearsay grounds. (Defs. Sur-Reply, Dkt. 69 at 5.) Defendants argue that Plaintiff has not laid the sufficient foundation to satisfy Rule 803(6), specifically, that Plaintiff has failed to offer a qualified witness to authenticate the record as required under 803(6)(D). (*Id*.) At the summary judgment phase, the party seeking admission under 803(6) "only need establish that the document has 'sufficient indicia of trustworthiness to be considered reliable.'" *Thanongsinh v. Board of Educ*., 462 F.3d 762, 777 (7th Cir. 2006) (internal citations omitted). Typically, an affidavit authenticating the document is required. *Id*. However, "an exception is applicable when the party challenging the document's admissibility . . . conceded the accuracy of the document." *Id*. (citing *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)). Specifically, a party concedes the accuracy of the document when the document is produced in discovery. *Thanongshinh*, 462 F.3d at 778. ("We therefore conclude that the defendants 'cannot reasonable question the reliability' of [documents] made by [defendants'] employees and produced in the course of litigation.") Here, Defendants' counsel produced the ACHN progress note with an accompanying note confirming that the ACHN progress report, "indicate[s] that Mr. Esparza was taken to the hand clinic on 1/31." (Dkt. 56, Ex. 13.) Therefore, we find the document sufficiently authenticated and will consider the report in this motion.

Later, on June 13, 2011, Plaintiff complained of hand pain after being handcuffed and filed a health service request form. (Defs. Ex. J at 0446.) Plaintiff was seen by a nurse in response to that request. (*Id*. ¶ 59.) This June 13 health request form is the only form offered by Plaintiff documenting a request for treatment for his hand injury. (*See* Defs. Ex. J.) Plaintiff also contends that he was denied surgery on his finger despite being told by an off-site doctor that his injury required surgery.³ (Dkt. 59-2 at 30.)

Plaintiff was released from CCDOC custody on July 5, 2011. (Defs. SOF ¶ 60.) After he was released from CCDOC custody, Plaintiff was evaluated and treated for a boxer's fracture he sustained in a fight in March 2013. (*Id*. ¶¶ 1–2.) Aside from treatment for the boxer's fracture, Plaintiff has not sought additional treatment for his hand since he was released from CCDOC. (*Id*. ¶ 24.)

Plaintiff is right handed. (Defs. SOF ¶ 3.) Plaintiff alleges that his right hand is now permanently deformed; he cannot straighten his right index finger, his right index finger is curved at the knuckle, he cannot close his hand all the way to make a fist, and he cannot make a

---

³ Additionally, Plaintiff alleges that he made several other requests for medical treatment for his hand from November 2010–July 2011. (Defs. SOF ¶ 9.) Based on Plaintiff's deposition testimony, we find that these alleged requests for medical treatment are inadmissible on relevance grounds. Plaintiff seeks relief for injuries sustained due to what he identifies as Defendants' policy of refusing to convey medical orders from off-site medical providers to Jail staff. (Compl. ¶ 9.) In his deposition testimony, Plaintiff stated that he filed multiple requests for medical treatment that were not transmitted to medical personnel at the Jail. (Dkt. 51-3 at 46.) These alleged written requests for medical care are irrelevant to Plaintiff's claim for two reasons. First, Plaintiff acknowledged that the medical requests forms were not received because he was not following proper procedure. (*Id*.) Because the requests were not received due to Plaintiff's own doing, it cannot be said that these grievances support a claim that *Defendants* failed to convey the request forms. Additionally, these medical request forms were filed at the Jail, not an off-site facility, and accordingly, do not support a claim that *off-site* orders were not conveyed to the Jail. Accordingly, we do not consider these alleged additional requests for treatment in this motion.

circle with his right index finger. (Pl. SOF ¶ 31.) Despite his injuries, Plaintiff can write, eat, groom himself, dress himself and work. (Defs. SOF ¶ 14.)

### b. Sheriff's procedures concerning transportation of detainees to and from off-site medical providers

Under Illinois law, the Sheriff is the custodian of the County Jail and "shall have the custody and care of . . . [the] jail . . . ." 55 ILCS 5/3–6017. As custodian of the Jail, the Sheriff is responsible for the transportation of detainees from CCDOC to off-site medical examinations. (Defs. SOF ¶ 37.) Detainees may receive medical care at the Jail (Cermak Hospital) or at an off-site facility (Stroger Hospital/Fantus). (Dkt. 51–5 at 7.) The Sheriff is not responsible for patient scheduling, that is done by Cermak Hospital. (Defs. SOF ¶ 39.) In order for a detainee to be scheduled for the hand clinic at Stroger, patient scheduling at Cermak must receive a "Consultation Request Form" and/or a phone call from a medical provider. (*Id*. ¶ 40.) After Cermak receives this information and schedules an appointment, Cermak generates a "Fantus Transportation Sheet ("Fantus pass")" that is sent to the Sheriff. (*Id*. ¶ 41.) Detainees are then scheduled to be moved and are transported by the Sheriff to Stroger. (*Id*. ¶ 44.) Once at Stroger, the Fantus pass for each detainee is taken within a folder to the Sheriff's Security Office. (*Id*. ¶ 45.) The Fantus pass is then sent up to the clinic the detainee is scheduled to visit. (*Id*.) After the appointment, the Fantus pass returns with the detainee. (*Id*. ¶ 46.) Finally, detainees are transported back to CCDOC, with the Fantus pass. (*Id*. ¶ 48.) The parties dispute what information, if any, is included in the envelope with the Fantus pass. Defendants allege that the envelope with the Fantus pass may contain follow-up medical information, such as progress notes from the provider at Stroger, prescriptions, appointment requests or other follow-up information regarding care. (Dkt. 59-7, Defs. Ex. F, ¶ 4.) Plaintiff alleges that the only

information that returns with the detainee from Stroger is the original transportation pass. (Pl. Resp. Dkt. 63, ¶ 4; Pl. SOF ¶ 37.)

In 2008, a DOJ investigation recommended that the Sheriff take steps to "[e]nsure that specialty consultations are timely and that any resulting reports are forwarded to [Cook County Jail] staff. Specialist recommendations should be implemented in a timely manner or, where deemed inappropriate, a [Jail] physician should properly document why such recommendations were [not] implemented."[4] (Pl. SOF ¶ 35.) In 2011, CCDOC began the transition to an electronic medical records system that allows medical information to be shared by Cermak and Stroger electronically. (Defs. SOF ¶ 6.)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving

---

[4] Defendants object to the admission of the DOJ investigation letter on hearsay grounds. (Defs. Resp. ¶ 35.) Because Plaintiff only seeks to rely on the DOJ letter to "inform[ ] defendant of the need for the reports generated at offsite medical consultations to be transported to staff at the jail," (Mem. ISO MSJ at 4), we find that the DOJ letter is not being offered for the truth of the matter asserted, and is not hearsay. Accordingly, we admit the DOJ letter for the limited non-hearsay purpose of showing that Defendants were placed on notice by the DOJ of possible problems with the transmission of medical documents from Stroger to Cermak. *See Talley v. Dart*, No. 08 C 5485, 2012 WL 1899393, at *5 n.* (N.D. Ill. May 24, 2012).

party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.*; Fed. R. Civ. P. 56(c).

In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 244, 106 S. Ct. at 2513. We do not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 625, 529 (7th Cir. 2009) (citing *Anderson*, 477 U.S. at 249–50, 106 S. Ct. at 2511). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004) (citation omitted).

## ANALYSIS

Plaintiff sues Defendant Dart in his official capacity under 42 U.S.C. § 1983. Plaintiff alleges that Defendants' unofficial practice of refusing to convey medical information from off-site providers to Jail medical personnel caused constitutional harm in the form of deliberate indifference to his medical needs.

The Fourteenth Amendment provides a pretrial detainee with a cause of action for deliberate indifference to his medical needs. *Heard v. Sheahan*, 148 Fed. Appx. 539, 540 (7th Cir. 2005) ("The Fourteenth Amendment, not the Eighth, protects a pre-trial detainee from denial of adequate medical care, but our analysis is practically identical to the Eighth Amendment standard of deliberate indifference."); *Hall v. Ryan*, 957 F.2d 402, 405 (7th Cir. 1992). "A finding of deliberate indifference requires a showing that the Sheriff was aware of a substantial risk of serious injury to Plaintiff but nevertheless failed to take appropriate

steps to protect him from a known danger." *Frake v. City of Chi.*, 210 F.3d 779, 782 (7th Cir. 2000); *accord Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014).

State officials may be liable under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035–36 (1978); *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009). Plaintiff must show "that an official policy or custom not only caused the constitutional violation [deliberate indifference to medical needs], but was the 'moving force' behind it." *Estate of Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).

Stated succinctly, Plaintiff must show: (1) Defendants have a policy or widespread practice that; (2) was the moving force behind; (3) a constitutional deprivation (deliberate indifference to Plaintiff's medical needs). *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008).

**1. An Official Policy or Custom Caused the Constitutional Deprivation**

Plaintiff brings this claim against Defendant Sheriff in his official capacity. Accordingly, for Defendant Dart to be held liable, Plaintiff must show an official policy or custom caused his constitutional violation. *Estate of Sims ex rel.,* 506 F.3d at 514. Relevant for our purposes, a municipal policy "may take the form of an implicit policy or a gap in expressed policies." *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F3.3d 293, 303 (7th Cir. 2009) (internal citation omitted); *see also id.* ("In situations where rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also actionable."); *Phelan*

*v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006). When a plaintiff does not point to an express policy, and instead relies on an implicit policy or gap in policies, "he must provide enough evidence . . . to permit an inference that the County has chosen an impermissible way of operating." *Calhoun v. Ramsey,* 408 F.3d 375, 381 (7th Cir. 2005). "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the [omission in the policy] and the constitutional deprivation." *City of Okla. v. Tuttle,* 471 U.S. 808, 824, 105 S. Ct. 2427, 2436 (1985). While "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability . . . it must be more than one instance, or even three." *Thomas*, 604 F.3d at 303; *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) (holding that three incidents of misconduct do not amount to a showing of widespread practice); *Palmer v. Marion Cty.*, 327 F.3d 588, 595 (7th Cir. 2003) (finding that plaintiff did not allege a municipal custom where plaintiff only cited two separate occasions of unconstitutional behavior). Plaintiff must establish that "there is a policy at issue rather than a random event." *Thomas*, 604 F.3d at 303.

Once plaintiff establishes that defendants have a widespread practice, custom, or policy, he must then show a "direct causal link between the policy or custom of the Sheriff's Department and the alleged constitutional violations." *Estate v. Sims ex rel.*, 506 F.3d at 515 (internal citations omitted).

Plaintiff claims that Defendants failed to adopt a policy to ensure that orders from off-site health providers were communicated to healthcare providers at the Jail and that this policy gap caused Plaintiff's disfigurement. (Compl. ¶¶ 12–13.) In Defendants' motion for summary judgment, Defendants argue that there is insufficient evidence in the record to support an

inference that there was a gap in policy and that there is no evidence to support the assertion that a Sheriff's policy caused the constitutional deprivation. (Mem. ISO MSJ at 9.)

We agree with Defendants. Because Plaintiff pursues a gap in policy *Monell* claim, he must provide sufficient evidence to support an inference that the Sheriff has an impermissible way of operating. *Calhoun,* 408 F.3d at 381. We find that the record does not support such an inference.

Reviewing the evidence in the light most favorable to Plaintiff, he, at most, alleges three specific instances in which he was denied medical treatment because his off-site medical orders were not properly transmitted to Jail staff. First, Plaintiff was scheduled for a follow-up appointment in February but was not transported to Stroger for that appointment. (Dkt. 51-6 at 36–37; *see also* Dkt. 51-8.) Secondly, Plaintiff never received prescribed physical therapy. (Def. SOF ¶¶ 17, 54.) Finally, Plaintiff testified that he was denied surgery on his finger despite being told by an off-site doctor that his injury required surgery. (Dkt. 59-2 at 30.) We find that three isolated incidents fail to establish a widespread custom of the Sheriff's Department required to support *Monell* liability.[5] *Thomas*, 604 F.3d at 303; *Estate of Moreland,* 395 F.3d at 760; *Palmer,* 327 F.3d at 595.

Because there is no genuine issue of material fact as to the first element of Plaintiff's *Monell* claim, we need not determine whether Defendants' actions constitute deliberate indifference to Plaintiff's medical needs. Without evidence of a widespread policy or custom, Plaintiff's entire claim must fail.

---

[5] As previously noted in fn. 3, we do not rely on the DOJ letter as actual evidence of Defendants' policy of refusing to transfer off-site medical orders back to Jail staff.

## CONCLUSION

For the reasons stated above, we deny Plaintiff's partial motion for summary judgment and grant Defendant's motion for summary judgment. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: January 19, 2016
Chicago, Illinois